1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8

9

10

11

12

MICHAEL AMES,

                           Plaintiff,

        v.

MARK LINDQUIST, et al.,

                           Defendants.

CASE NO. C16-5090BHS

ORDER REQUESTING
ADDITIONAL BRIEFING AND
RENOTING MOTION

13

14

15

16

17

        This matter comes before the Court on Defendants Mark Lindquist, Chelsea

Lindquist, and Pierce County's ("Defendants") motion to dismiss (Dkt. 26). The Court

has considered the pleadings filed in support of and in opposition to the motion and the

remainder of the file and hereby requests additional briefing and renotes the motion for

the reasons stated herein.

18

**I. PROCEDURAL HISTORY**

19

20

21

22

        On February 2, 2016, Plaintiff Michael Ames ("Ames") filed a complaint against

Defendants in Pierce County Superior Court for the State of Washington.  Dkt. 1, Exh. 1.

Ames asserted causes of action for violations of his constitutional rights, conspiracy to

violate his civil rights, abuse of process, invasion of privacy, constructive discharge,

ORDER - 1

1    outrage, and indemnification.  *Id.*  On February 22, 2016, Defendants filed a motion to

2    dismiss.  Dkt. 13.  On April 21, 2016, the Court granted the motion concluding that Ames

3    failed to connect factual allegations to the elements of his causes of action and granted

4    Ames leave to amend.  Dkt. 21.

5         On May 5, 2016, Ames filed a First Amended Complaint ("FAC") asserting six

6    causes of action: (1) violations of his civil rights, including his First Amendment right to

7    freedom of speech, right to redress or petition, and right to access the courts and his

8    Fourteenth Amendment rights to procedural and substantive due process, (2) abuse of

9    process, (3) invasion of privacy, (4) constructive discharge/breach of contract, (5)

10   outrage, and (6) indemnification.  Dkt. 24.  The FAC is 72 pages long, and Ames

11   attached 320 pages of appendices.  *Id.*

12        On May 19, 2016, Defendants filed a motion to dismiss.  Dkt. 26.  On June 5,

13   2016, Ames responded.  Dkt. 29.  On June 10, 2016, Defendants replied and moved to

14   strike portions of Ames's response.  Dkt. 30.

15                              **II. DISCUSSION**

16        Defendants move to strike portions of Ames's brief for violations of Local Rules 7

17   and 10.  Dkt. 30 at 1–2.  Specifically, Defendants contend that Ames did not use twelve-

18   point font, did not double space text, and used single spaced footnotes to argue

19   substantive issues.[1]  *Id.*  If the brief is not properly formatted because of page limitations,

20

21        [1] The 24-page brief contains 138 footnotes.  While some footnotes are for citation
22   purposes only, others contain substantive arguments and extensive quotes from various legal
     authorities.

1   then the parties are hereby informed that, in unique and complicated cases, the

2   undersigned rarely denies motions to file overlength briefs.  Local Rules, W.D. Wash.

3   LCR 7(f).  Regardless of the reason for improper formatting, the fact that it happened

4   highlights the actual issue, which is the number and breadth of issues Ames raises in his

5   complaint.  Although the FAC solved problems with brevity, it doesn't resolve the

6   problems of clarity.

7           For example, Defendants present a persuasive argument that some of Ames's

8   federal claims are barred by the three-year statute of limitations.  Dkt. 26 at 6–7.  Ames

9   filed suit on February 2, 2016, which means that he *may* be barred from asserting claims

10  for actions that occurred before February 2, 2013.  While Ames includes dates in his

11  allegations of fact (*see* FAC ¶¶ 5.5–5.36), the only date Ames includes in his federal

12  cause of action is the date he alleges he was constructively discharged (*see id*. ¶¶ 6.1–

13  6.82; *id.* ¶ 6.3 (constructively discharged on May 10, 2014)).  Reviewing the allegations

14  of fact, Ames alleges illegal acts by Defendants that occurred both before and after the

15  February 2, 2013 deadline.  Thus, Defendants have a persuasive argument that at least

16  some of Ames's allegations are barred.

17          In response, Ames apparently contends that his claims are not barred.  Ames

18  argues as follows:

19          The date the tolling period starts to run for purposes of counting forward is
            the date "after the cause of action has accrued." Various common law
20          doctrines apply to determine when a cause of action has accrued, which are
            all implicated here as to Ames' [sic] claims. Ames perfected his claims
21          prior to filing by serving a claim form on October 9th, 2015, and entered a
            tolling agreement that expired January 31, 2016. Ames filed suit February

22

1, 2016 after his claims were perfected upon his constructive discharge effective May 10, 2014.

Dkt. 29 at 2–3 (footnotes omitted).[2]  In a footnote, Ames provides as follows:

> The discovery doctrine is a supplemental accrual doctrine that helps to define when the statute begins to run, which is the date plaintiff learns the salient facts underlying the elements of the cause of action. *Cloud ex. rel. Cloud v. Summers*, 98 Wn. App. 724, 734, 991 P.2d 1169 (1999); *Mangum v. Action Collection Service, Inc.*, 575 F. 3d 935, 940 (9th Cir. 2009). Equitable estoppel tolls the statute during periods when defendants have denied plaintiff access to the information that would prove her claims. *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984). The continuing wrong theory applies to serial violations involving a number of discriminatory acts both before and during the statutory period, or systemic violations involving continuing policy or practices, sub-acts, and present effects of past discrimination. *National Railroad Passenger Corp. (Amtrak) v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061 (2002); *Anderson v. Reno*, 190 F.3d 930, 936 (9th Cir. 1999); *Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir. 1997).

*Id*. at 3 n.6 (emphasis omitted).  Ames, however, fails to provide any analysis showing these cases apply to the allegations in this case.  How does the discovery doctrine relate to retaliatory acts in relation to free speech rights?  What information was kept from Ames to support a First Amendment retaliation claim?  More importantly, in regard to the continuing wrong theory, "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'"  *Amtrak*, 536 U.S. at 110.  Ames simply fails to apply any of the numerous laws to his allegations.

    In reply, Defendants failed to address these issues.  The Court can only assume that Defendants elected to concentrate on other issues in their limited pages or maybe Defendants assumed the Court would strike this particular argument from Ames's brief.

---

[2] Ames does not cite the record for the purported tolling agreement.

1   Dkt. 30 at 2 (the "Court should strike or refuse to consider those portions in violation of

2   the LCR's pleading requirements.").  Because Defendants assert that Ames used an

3   improper font size, are they asking the Court to strike the entire brief for failure to abide

4   by the pleading requirements?  This solution seems implausible, and it would be an

5   injustice to randomly select portions of the brief to strike.  Regardless, the Court finds

6   prejudice in Ames's failure to properly format his brief and in his inclusion of numerous

7   substantive footnotes.  Based on the lack of a better solution, the Court will resort to

8   micromanaging this dispositive motion.  First up, the First Amendment. At this time, the

9   Court requests additional briefing on the threshold issue of whether Ames's First

10  Amendment claims are barred by the statute of limitations, whether Ames states a valid

11  legal claim for relief for violations of his right to freedom of speech, redress, and access

12  to the courts, and whether any of these rights has been clearly established.

13      With regard to Ames's First Amendment public employee speech claim, the Court

14  will highlight some of the issues for which it requests additional briefing.  In order to

15  state a claim against a government employer for violation of the First Amendment, an

16  employee must show (1) that he or she engaged in protected speech; (2) that the employer

17  took adverse employment action; and (3) that his or her speech was a substantial or

18  motivating factor for the adverse employment action.  *Coszalter v. City of Salem*, 320

19  F.3d 968, 973 (9th Cir. 2003).  "A discrete retaliatory or discriminatory act 'occurred' on

20  the day that it 'happened.'"  *Amtrak*, 536 U.S. at 110.  Thus, these authorities stand for

21  the proposition that a retaliatory adverse employment action must have occurred within

22  the applicable statute of limitations.

1        Turning to Ames's allegations, Ames asserts generally that "Defendants retaliation

2 involves a series of events that cumulative [sic] resulted in Det. Ames' constructive

3 discharge." Dkt. 24, ¶ 6.51.  First, this allegation raises the issue of whether constructive

4 discharge is an adverse employment action in the context of a First Amendment

5 retaliation claim.  Buried in one of Ames's substantive footnotes is a citation to *Sanchez*

6 *v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir. 1990), for the proposition that a

7 "[s]ingle isolated incident of employment discrimination may be sufficient to prove

8 constructive discharge." Dkt. 29 at 20 n.111.  However, the issue in *Sanchez* was

9 whether his award of backpay was proper because "[a]n employee who resigns, as

10 Sanchez did, cannot secure backpay unless his employer constructively discharged him."

11 *Sanchez*, 915 F.2d at 431.  Ames has failed to show that the law regarding damages is

12 relevant to establishing an adverse employment action.  Thus, this issue is undeveloped in

13 the record.

14        Next, if constructive discharge is not a retaliatory act, then Ames must identify

15 other acts within the statutory period or that are subject to tolling.  Ames, being the

16 master of his complaint, is the party in the best position to identify these discrete acts and

17 the dates they occurred.  For the purposes of this round of supplemental briefing, the

18 Court is only concerned with Ames's First Amendment claims.  This is a federal court

19 and the federal issues will be decided first.  Once these claim are clearly determined, the

20 Court can assess whether the claim is valid and properly consider the defenses of the

21 statute of limitations and immunity.

22

1

### III. ORDER

2          Therefore, it is hereby **ORDERED** that Ames may file a supplemental response

3   no longer than 24 pages, no later than July 25, 2016; Defendants may file a supplemental

4   reply no longer than 12 pages, no later than July 29, 2016; and the Clerk shall renote

5   Defendants' motion for consideration on the Court's July 29, 2016 calendar.  Footnotes

6   may be used for citation purposes only.  Any substantive material contained in a footnote

7   will be ignored.

8          Dated this 20th day of July, 2016.

9

10
                                              _____
11                                            BENJAMIN H. SETTLE
                                              United States District Judge
12

13

14

15

16

17

18

19

20

21

22