UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL AMES,<br><br>                Plaintiff,<br><br>    v.<br><br>MARK LINDQUIST, et al.,<br><br>                Defendants. | CASE NO. C16-5090 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

This matter comes before the Court on Defendants Mark Lindquist ("Lindquist"), Mark and Chelsea Lindquist, and Pierce County's ("County") (collectively, "Defendants") motion to dismiss (Dkt. 49). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On February 1, 2016, Plaintiff Michael Ames ("Ames") filed a complaint in Pierce County Superior Court for the State of Washington against Defendants asserting numerous causes of action. Dkt. 1-1. On February 6, 2016, Defendants removed the matter to this Court. Dkt. 1.

On May 5, 2016, Ames filed a seventy-two page amended complaint with 320 pages of appendices. Dkt. 24. On May 19, 2016, Defendants moved to dismiss. Dkt. 24.

The Court divided the motion into three parts and requested additional briefing. Dkt. 32. On October 6, 2016, The Court granted the motion in part and denied the motion in part. Dkt. 35. The Court denied the motion on Ames's first amendment claims against the County. *Id.* On April 26, 2017, the Court granted the motion on Ames's due process claims and granted Ames leave to amend. Dkt. 41. On June 21, 2017, the Court granted the motion in part and denied it in part, dismissed Ames's state law indemnification claim with prejudice, and granted Ames leave to amend other state law claims. Dkt. 45.

On June 30, 2017, Ames filed a seventy-three-page Second Amended Complaint and 360 pages of appendices. Dkt. 46.

On July 14, 2017, Defendants filed a motion to dismiss. Dkt. 49. On August 7, 2017, Ames responded. Dkt. 50. On August 11, 2017, Defendants replied and move to strike the overlength portions of Ames's brief. Dkt. 51.[1]

## II. DISCUSSION

As a threshold matter, the Court agrees with Defendants that Ames has created potential statute of limitations issues by asserting allegations that occurred years before the applicable period of limitations for some claims. Ames, however, has also asserted allegations that occurred within the applicable periods. At this time, the Court declines to parse the complaint on an allegation-by-allegation basis because, for each claim that

---

[1] Defendants argue that "Plaintiff continues to willfully and deliberately disregard the Court's rules regarding formatting briefs." Dkt. 51 at 5. The Court agrees because Ames's brief is not in 12 point font and is not double spaced throughout. The Court is hesitant to punish an allegedly aggrieved party for his counsel's failure to follow simple procedural rules. The Court, however, will forewarn counsel that subsequent failures to follow procedural rules may result in significant sanctions imposed against counsel. The merits of the case are complicated enough without the seemingly intentional acts to needlessly increase the content of the briefs.

survives, Ames has alleged at least one fact to establish the claim. Theories and/or facts under each claim that are barred will be disposed of as the matter proceeds. With that understanding, the Court will consider Defendants' motion.

**A.    Standard**

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Twombly*, 127 S. Ct. at 1965. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

**B.    Federal Claims**

Ames asserts claims for violations of his First Amendment and Fourteenth Amendment rights. The Court has concluded that Ames has stated a First Amendment retaliation claim against Pierce County. Dkt. 35. While the claim is limited to municipal liability because Ames has failed to name any individual besides Lindquist, the Court concludes that Ames has asserted sufficient allegations to overcome a motion to dismiss. *Id*.

Regarding Ames's First Amendment claim against Lindquist, the complaint is extremely confusing. If one reads the complaint, ignoring the labels and conclusions, it would seem that Ames is alleging that Lindquist organized a broad conspiracy to ruin Ames's career as a police officer. Ames also alleges that Lindquist ordered his subordinates to perjure themselves in an effort to fabricate impeachment evidence to use against Ames in pending and future criminal matters. Oddly, Ames further alleges that the current defense attorney is one of Lindquist's specialized deputies that he ordered to pursue frivolous sanctions against Ames in a previous lawsuit. Dkt. 46, ¶¶ 5.36 ("Mike Patterson . . . whom Lindquist specially deputized in Ames' name clearing case"), 6.26 ("Lindquist further directed his special deputies to pursue frivolous lawsuit sanctions against Ames for daring to request a name clearing hearing judicially."). Ames, however, fails to assert a conspiracy claim. Instead, Ames asserts his claim against Lindquist on an individual basis. Despite the fact that Ames is attempting to fit a square peg into a round hole, the Court finds that at least one theory of First Amendment liability survives Defendants' motion to dismiss.

In order to state a claim for retaliation in violation of the First Amendment, a plaintiff must allege "that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016). Ames has asserted an allegation under each element. Ames has alleged that he filed a civil case in state court seeking a name clearing hearing. Dkt. 46, ¶ 6.25.

Ames alleges that Lindquist directed his subordinates to perjure themselves in that case to further discredit Ames. *Id.*, ¶ 6.20. Ames alleges that Lindquist's conduct was motivated by Ames's attempts to clear his name because Lindquist benefitted from publically undermining Ames's credibility. *Id.*, ¶ 6.8. While Lindquist did not submit a declaration on this own behalf, Ames has alleged that Lindquist set in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional harms, which supports individual liability of a supervisor. *See Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Therefore, Ames states a valid First Amendment claim against Lindquist.

Lindquist, however, argues that he is entitled to absolute and qualified immunity. Dkt. 49 at 15–19. Lindquist is not entitled to absolute immunity because Lindquist has failed to show that directing subordinates to file perjured declarations in civil matters is an activity "intimately associated with the judicial phase of the criminal process." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Similarly, Lindquist is not entitled to qualified immunity because "[r]etaliation for engaging in protected speech has long been prohibited by the First Amendment." *O'Brien*, 818 F.3d at 936 (denying qualified immunity). Therefore, the Court denies Defendants' motion on the issues of whether Lindquist is entitled to immunity on Ames's First Amendment retaliation claim.

Regarding Ames's procedural due process claims, the Court granted Ames leave to amend to correct certain deficiencies in his claims. Dkt. 41 at 6–10. Specifically, the Court stated that Ames failed to allege that any defamation was made in connection with

his termination. *Id*. at 6–7 (citing *Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998)). Defamation, by itself, is not a violation of liberty interests. *Paul v. Davis*, 424 U.S. 693, 706 (1976). At most, Ames alleges that he was denied a name clearing hearing, but fails to connect the alleged defamation with termination of his employment. Dkt. 46, ¶¶ 6.87–6.96. Therefore, the Court grants Defendants' motion to dismiss Ames's procedural due process claim.

Regarding the substantive due process claim, Ames has failed to cure the deficiencies previously identified by the Court. In granting Defendants' first motion to dismiss, the Court concluded that Ames had failed to allege that Defendants' conduct had made "it virtually impossible for the employee to find new employment in his chosen field." *Id*. at 10–11 (citing *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 997 (9th Cir. 2007) *aff'd* 553 U.S. 591 (2008)). Ames amended his complaint by alleging that Defendants' actions made it impossible to work at Pierce County or "as a computer forensic examiner for any other law enforcement agency and in the private sector." Dkt. 46, ¶¶ 6.97–6.98. Defendants contend that such allegations fail to establish that this is an extreme case that warrants constitutional protections because Ames has failed to assert allegations that he is effectively blacklisted from ever working in law enforcement. Dkt. 49 at 26. The Court agrees. Substantive due process protections are available in "extreme cases" in which the allegations reach the hypothetical level of "the government [having] yanked the license of an individual in an occupation that requires licensure." *Engquist*, 478 F.3d at 997 (quoting *Olivieri v. Rodriguez*, 122 F.3d 406, 408 (7th Cir. 1997)). "It is not enough that the employer's stigmatizing conduct has some adverse

effect on the employee's job prospects; instead, the employee must show that the stigmatizing actions make it virtually impossible for the employee to find new employment in his chosen field." *Id*. Alleging adverse effects on future prospects as a computer forensic expert is not an extreme case warranting due process protections. Therefore, the Court grants Defendants' motion on Ames's substantive due process claim.

**C. Abuse of Process**

The Court has concluded that Ames has stated a valid abuse of process claim. Dkt. 45 at 3–4. Defendants attack this conclusion and the amended complaint on the grounds that the truth or falsity of the declarations is irrelevant. Dkt. 49 at 28–29. The Court agrees with Defendants on this issue, but Ames's claim is based on allegations of deliberate fabrication of false evidence. In these circumstances, the Court concludes that Ames has at least stated a claim. Moreover, Defendants have failed to show, at this point, that the claim is barred by collateral estoppel because the same issues were not decided in Ames's state court writ of prohibition action. Therefore, the Court denies Defendants' motion on this issue.

**D. Defamation – False Light**

Defamation requires four elements: (1) falsity; (2) an unprivileged communication; (3) fault; and (4) damages. *Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 100 Wn.2d 343, 352 (1983). "The defense of absolute privilege applies to statements made in the course of judicial

proceedings and avoids all liability." *Twelker v. Shannon & Wilson, Inc.*, 88 Wn.2d 473, 475 (1977).

In this case, Ames has stated a claim for defamation. Defendants argue that they are entitled to absolute privilege because the alleged defamatory statements were made in the course of judicial proceedings. In response, Ames states in conclusory fashion that the "content was wholly unrelated to the issues before the court." Dkt. 50 at 37. Defendants reply in conclusory fashion that "Plaintiff's claims center on privileged court filings and conduct protected by immunity." Dkt. 51 at 17. Defendants bear the burden on immunity. Thus, in the current battle of conclusory assertions, Ames prevails.

Defendants also argue that Ames fails to sufficiently allege that Defendants acted with malice. Dkt. 49 at 33–34. "A defendant acts with malice when he knows the statement is false or recklessly disregards its probable falsity." *Duc Tan v. Le*, 177 Wn.2d 649, 669 (2013). Ames responds that the complaint includes allegations that prosecutors Richmond, Kooiman, and Lewis acted knowing that the statements regarding Ames were false. Setting aside the fact that these are not named Defendants, which Defendants do not argue, these allegations are sufficient to state a claim that at least someone acted knowing that statements were false. Therefore, the Court denies Defendants' motion on Ames's defamation claim.

Similarly, the Court concludes that Ames has asserted allegations that support a claim for false light. Ames alleges that Defendants, through employees not named, published false information regarding Ames and that they acted with malice. Therefore, the Court denies Defendants' motion on this issue.

### E. Wrongful Discharge

Ames states this claim under "the theories of breach of contract and justifiable reliance, and alternatively wrongful termination in violation of public policy." Dkt. 46, ¶ 6.145. Regarding the breach of contract, Ames alleges that he had an express contract of employment under the collective bargaining agreement and that various statutes, codes, policies, procedures, and his Oath of Office establish an implied contract. *Id*. ¶¶ 6.152–6.160. Defendants argue that Ames fails to "allege that his collective bargaining agreement was breached" or "list the provisions in the agreement that were allegedly breached." Dkt. 49 at 37. The Court agrees. It is rather amazing that in the numerous pages and paragraphs of conclusory allegations that Ames has forced Defendants and the Court to read and consider, he fails to assert the simple factual allegation that Defendants breached the collective bargaining agreement. Similarly, Ames's response fails to provide any clarity on this issue. Therefore, the Court grants Defendants' motion on Ames's breach of contract claim based on any express agreement because Ames has failed to assert the simple allegation of a contract that was breached. The Court dismisses the claim with prejudice because the Court specifically identified this deficiency in Ames's previous complaint, Dkt. 45 at 5, and Ames failed to correct the deficiency. *See Reynolds v. City of Eugene*, 599 Fed. Appx. 667, 668 (9th Cir. 2015) ("A district court's discretion in deciding motions for leave to amend is 'particularly broad' when the court has already granted leave to amend.").

Regarding Ames's implied contract and justified reliance theories based on various statutes, codes, policies, procedures, and his Oath of Office, Defendants argue

that these policies are general policies that may not form the basis of a justified reliance claim. Dkt. 49 at 38–39. The Court agrees with most of Defendants' arguments. For example, Ames's claim that his Oath of Office creates an implied contract of employment is frivolous. On the other hand, Ames cites at least one statute that he could have justifiably relied upon. The Pierce County Code provides that no county officer or employee will use his position to retaliate against another employee for the reporting of improper government action. PCC 3.14.030(F). Ames alleges that this was a promise of specific treatment in a specific situation upon which he relied to his detriment. Although Defendants provide some authority for the proposition that general policies may not create an implied contract of employment, they do not provide any authority for the proposition that a party is precluded from basing a wrongful termination claim on such a county code against whistleblower retaliation. Therefore, the Court denies Defendants' motion on this issue.

Regarding wrongful termination in violation of public policy, Ames has stated a claim. Employees that are terminable for cause may assert a wrongful discharge claim based on unlawful retaliation. *Riccobono v. Pierce Cty.*, 92 Wn. App. 254, 266 (1998). Moreover, Washington courts allow claims for wrongful discharge in violation of public policy where the employee alleges that he was discharged for "engaging in 'whistleblowing' activity.'" *Becker v. Cmty. Health Sys., Inc.*, 182 Wn. App. 935, 942 (2014), *aff'd*, 184 Wn.2d 252 (2015) (citing *Dicomes v. State*, 113 Wn.2d 612, 618 (1989)). Ames has asserted sufficient allegations to state a claim under both theories. Therefore, the Court denies Defendants' motion on this claim.

**F.    Outrage**

In order to state a claim for intentional infliction of emotional distress, the plaintiff must allege: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Boker*, 149 Wn.2d 192, 195–96 (2003) (citations omitted). This tort also is synonymous with the tort of "outrage." *Id*. The court must initially determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. *Dicomes*, 113 Wn.2d at 630. Public figures and officials must prove falsity and actual malice in order to prevail on an outrage claim. *Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988).

In this case, Defendants move to dismiss Ames's outrage claim on every element. Dkt. 49 at 41–44. First, any claim for intentional infliction of emotional distress must be predicated on behavior "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Grimsby v. Samson*, 85 Wn.2d 52, 59 (1975) (quoting *Restatement (Second) of Torts* § 46 cmt. d). The tort of outrage "'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' In this area plaintiffs must necessarily be hardened to a certain degree of rough language, unkindness and lack of consideration." *Id*. (quoting *Restatement (Second) of Torts* § 46 cmt. d).

Defendants argue that Ames fails to allege outrageous conduct. Dkt. 49 at 42–43. The Court agrees to a certain extent. For example, Ames alleges that Defendants

"subjected all of Ames' work to heightened scrutiny and unwarranted criticisms." Dkt. 46 ¶ 6.210. Ames also alleges that Defendants "sought sanctions against him for requesting a name clearing hearing from the courts, making false claims about the merits of his case." *Id*. ¶ 6.212. It would seem that a police officer could withstand heightened scrutiny of his investigations without the infliction of severe emotional distress. It also seems that requesting reimbursements for costs incurred because Ames's attorney's actions fell below the standards of professional conduct would not inflict severe emotional distress. On the other hand, the allegations that Defendants deliberately fabricated evidence of dishonesty and published the evidence by delivering it to the local media and posting it on social media establishes a debatable issue of outrageous conduct. *See Dicomes v. State*, 113 Wn.2d 612, 630 (1989) ("it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability."). Thus, the Court denies the motion on this issue.

Second, Defendants argue that Ames has failed to sufficiently allege injury. Dkt. 49 at 43 ("Plaintiff fails to allege that the actual result of this alleged conduct was severe emotional distress beyond a single, conclusory statement stating as much."). In response, Ames merely reiterates his single, conclusory statement that he "suffered severe emotional distress that required him to seek treatment." Dkt. 50 at 44; Dkt. 46, ¶ 6.221. This is mostly an improper formulaic recitation of the element of the claim. *Twombly*, 127 S. Ct. at 1965. "Emotional distress" includes "all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." *Restatement (Second) of Torts*, supra, cmt. j at 77.

Severe emotional distress is, however, not "transient and trivial" but distress such "that no reasonable man could be expected to endure it." *Kloepfel v. Bokor*, 149 Wn.2d 192, 203 (2003); *see also Corey v. Pierce Cty.*, 154 Wn. App. 752, 759 (2010) (plaintiff "suffered severe depression, at one point was suicidal, and experienced an onset of epileptic seizures."). In light of these authorities, an argument could be made that merely having to seek treatment does not rise to the level of severe emotion distress. However, it can also be inferred that Ames had to seek treatment for symptoms such as severe depression and other highly unpleasant mental reactions. Therefore, the Court concludes that Ames has stated a claim for outrage and denies Defendants' motion on this claim.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion to dismiss (Dkt. 49) is **GRANTED in part** and **DENIED in part** as stated herein.

The Court denies the motion on Ames's First Amendment claim against Defendants, denies Lindquist absolute and qualified immunity, and denies the motion as to Ames's abuse of process, defamation, wrongful termination, and outrage claims.

The Court grants the motion on Ames's Fourteenth Amendment claim and dismisses the claim with prejudice and without leave to amend.

Dated this 11th day of November, 2017.

BENJAMIN H. SETTLE
United States District Judge